IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| PAUL SEAN GAFFNEY #00759646 | § | |
| VS. | § | CIVIL ACTION NO. 6:23cv319 |
| BRYAN COLLIER, et al. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Paul Sean Gaffney, an inmate of the Texas Department of Criminal Justice (TDCJ) proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. The case was referred to the undersigned for findings of fact, conclusions of law, and recommendations for the disposition of the case.

**I. Plaintiff's Allegations and Procedural History**

Plaintiff filed his original complaint in June 2023. (Dkt. #1.) On July 6, 2023, the Court found that pleading to be deficient and ordered him to amend to "stat[e] specific facts to support his claims." (Dkt. #5 at 2.) The Court expressly instructed Plaintiff to "explain in detail how and when his own constitutional rights were allegedly violated, identify the defendants responsible for those violations, specify how each defendant personally violated his constitutional rights, explain how he was harmed or injured by those violations, and specify the relief he seeks." (*Id.*)

Plaintiff's amended complaint is now before the Court for screening. (Dkt. #13.) In it, Plaintiff alleges that in May 2021 he accepted an invitation from TDCJ Veteran Services Supervisor Eric Pichardo to move to a prison dorm reserved for veterans. (Dkt. 13-1 at 6.) In June of that year, the private organization AIM VETS became involved with life in the dorm. (*Id.*) They

instituted a Moral Reconation Therapy (MRT) program, including workbooks. (*Id.*) Plaintiff found the program problematic because it "presented immediate PTSD outburst, conflicts with non-Veteran Volunteers, and tensions among the Veterans." (*Id.*) Plaintiff wrote of his complaints to Pichardo, who promised to look into the matter but then went on hiatus. (*Id.*)

Specifically, Plaintiff describes his objection to and eventual rejection of the MRT program as follows:

> The Moral Recon[a]tion Therapy books presented pressures to significantly modify Plaintiff's Religious Behavior, as it relates to trusts and the sanctity of the testimony. Further, forcing Plaintiff to choose being in "Program" Legislated Dorm or following Religious Beliefs. Additionally, giving assuring language of removal from "program" or placed in another. Plaintiff choosing to follow his Religious Beliefs was his last completed lesson in the "program"; where he gave testimony that he didn't trust the program, and questioned if one legitimately existed.

(Dkt. #13-1 at 10.) Plaintiff alleges there were never any clear standards or guidelines associated with the program, other than the "unauthorized posted rules," which were "not abided by in the midst of the collateral damage they caused." (*Id.*)

On January 7, 2022, Plaintiff wrote to April Zamora, TDCJ Director of Reentry and Integration Division, complaining about unspecified "acts of AIM VETS, Officer Rudder, Wendell Northcutt, and the Classification Plan blunders." (Dkt. #13-1 at 6.) He also complained that he had heard a rumor about a "plot to frame Plaintiff a Sexual Predator." (*Id.*)

Jim Poe, an AIM VETS volunteer, announced that he was being audited. (Dkt. #13-1 at 6.) But after a meeting with April Zamora, AIM VETS volunteer Casey Spencer announced an agreement to have AIM VETS operate all veterans' dorms throughout TDCJ. (*Id.* at 6–7.) Reentry and Integration counselor Wendell Northcutt and Officer Rudder then posted a list of veterans' dorm "expectations/rules," known as S.T.R.I.P.E.S. (*Id.* at 7.) "These rules directed and authorized other inmates to access, monitor, and correct the character of the other Veterans within the door."

2

(*Id.*) Plaintiff alleges that these rules led to assaults on him but that they "were grossly neglected in the midst of the investigation of these claims." (*Id.*)

On February 22, 2022, Plaintiff wrote to TDCJ Director of RPD Chris Carter "to inform him of the activities of the volunteers," but he received no response. (*Id.*) In March 2022, Plaintiff received a workbook about "battling shadows," which he says "caused many confrontations with [his] belief system, and appeared Constitutionally infringing." (*Id.*) In response to Plaintiff's questions about the material on March 17, 2022, AIM VETS volunteer Jim Poe said that Plaintiff would be gone before the program was gone. (*Id.*) That same day, Plaintiff attempted to see Chaplain Grasty about the "infringements on his religious beliefs," but Grasty was not present. (*Id.* at 9.) Instead, Plaintiff wrote a letter "presenting areas Plaintiff was feeling pressured by MRT BOOKS and AIM VETS to alter his Religious Beliefs," but he never received a response. (*Id.*)

On March 28, 2022, Plaintiff was on his way out of the visitation room when he encountered Rudder and Spencer walking in the direction of the PREA office, and Spencer called him a "stalker." (Dkt. #13-1 at 7.) Plaintiff asked Rudder about the comment the next day and was told Spencer was just kidding, but on March 30, 2022, Officer Rudder packed up inmate Green "due to PREA Sexual Harassment claims against Plaintiff." (*Id.*)

Also on March 30, Plaintiff was "assaulted with hot coffee and called 'faggot'; due to following posted rules." (*Id.*) The assault was never reported other than in Plaintiff's grievance, and to Plaintiff's knowledge there was no disciplinary hearing for his attacker. (*Id.* at 8.) Plaintiff says Inmate Duggard—presumably his attacker—was transferred "with claims of support and continued collusion with AIM VETS Volunteers." (*Id.*)

Still on March 30, Plaintiff went to the mental health department "due to extreme emotional turmoil at the unfolding of the conspiracy," but Sergeant Davis came to have him report to the

3

PREA office. (*Id.*) Once there, Sergeants Davis and Beusch began questioning Plaintiff about his sexuality, and Beusch said he would write "bisexual" when Plaintiff refused to give any answer other than "abstinence." (*Id.*) Plaintiff says he sent letters explaining to Davis and Unit Classification that he took a vow of abstinence "along with his Religious card change in 2014." (*Id.*) "It appeared this connotation was part of the conspiracy." (*Id.*)

Plaintiff's hearing in the investigation was postponed from April 5, 2022, to April 6, when he was escorted to the office of Captain Cori Brown, who informed him that the PREA allegation had been ruled "unsubstantiated," but he was nevertheless being removed from the veterans' dorm due to his behavior. (Dkt. #13-1 at 8–9.) Plaintiff alleges that the reference to his behavior was a "false statement participating in the conspiracy to label Plaintiff a Sexual Predator, Sexually Discriminating, violating Plaintiff's constitutional rights and depriving him of a reasonable standard of care," and "[s]howing Deliberate Indifference to Plaintiff's right [to] Equal Protection in the PREA investigation." (*Id.*)

Plaintiff describes his claims for relief as follows:

> The Plaintiff presents he is entitled to relief on the basis Defendant's Deliberate Indifference to his First and Eighth Amendments of U.S. Constitutional Rights. The Defendants caused mental and physical harm to come upon Plaintiff, due to their acts and omissions. Defendants blatantly dismissed PREA Final Standard Rule and guidelines; utilizing it as a Retaliatory tool denying Plaintiff his Constitutional Right to Equal Protection of the Laws of this Land. Additionally, relief is entitled on the basis of Separation of Church and State; where Plaintiff was deprived of State Legislated housing for choosing to stand his Religious Foundational ground.

(Dkt. #13-1 at 11.) He sues a long list of TDCJ employees and AIM VETS volunteers for "general and nominal damages" of $25,000 each and punitive damages of $50,000 each. (*Id.* at 11–12.) He also seeks a declaration that Defendants' actions violated his rights under the First, Eighth, and Fourteenth Amendments and injunctions to expunge all PREA records concerning Plaintiff, stop requiring inmates to divulge their sexual preferences, and prevent TDCJ from claiming

4

"compliance to PREA while operating facilities with communal showers, and conducting inadequate investigations of interpretted [sic] looks." (*Id.* at 11–12.)

**II. Legal Standards and Preliminary Screening**

Because Plaintiff is a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Because he is proceeding as a pauper, his pleading is also subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B). Both statutes provide for *sua sponte* dismissal of a complaint—or any portion thereof—if the Court finds it frivolous or malicious, if it fails to state a claim upon which relief can be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it lacks an arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). The Fifth Circuit has held that a complaint lacks an arguable basis in fact when "the facts alleged are fantastic or delusional scenarios or the legal theory upon which a complaint relies is indisputably meritless." *Id*. (quoting *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) (internal quotation marks omitted)). In other words, during the initial screening under section 1915A, a court may determine that a prisoner's complaint is frivolous if it rests upon delusional scenarios or baseless facts—and dismiss the complaint. *See Henry v. Kerr County, Texas*, 2016 WL 2344231 *3 (W.D. Tex. May 2, 2016) ("A court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, fanciful, fantastic, delusional, or otherwise rise to the level of the irrational or the wholly incredible, regardless of whether there are judicially noticeable facts available to contradict them.") (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

5

Moreover, a complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is not akin to a probability standard; rather, the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556 (emphasis supplied).

All well-pleaded facts are taken as true, but the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414 (5th Cir. 2012) (unpublished) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id.* Particularly with regard to any claim that defendants have conspired to harm him, a plaintiff must plead specific, non-conclusory facts that establish that there was an agreement among the defendants to violate his federal civil rights. *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004); *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987) (plaintiffs asserting

conspiracy claims under Section 1983 must plead the operative facts on which their claim is based; bald allegations that a conspiracy existed are insufficient).

**III. Discussion and Analysis**

    A.  <u>First Amendment</u>

Plaintiff's lawsuit appears to be based primarily on the fact that he was investigated in a sexual harassment matter that was found to be not substantiated, and he was briefly subjected to a veterans' program to which he objected before being removed. Neither event constitutes a violation of his First Amendment rights.

    1.  Retaliation

First, Plaintiff's allegations do not establish a violation of his First Amendment right to be free from retaliation. Officials may not retaliate against an inmate for exercising his First Amendment rights. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). Inmates can state a claim for retaliation in violation of the First Amendment by alleging "that (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Causation in a retaliation case requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (internal citations omitted). "The relevant showing in such cases must be more than the prisoner's personal belief that he is the victim of retaliation." *Id*. (internal quotation marks omitted). "The inmate must produce direct evidence of motivation, or the more probable scenario,

allege a chronology of events from which retaliation may be plausibly inferred." *Woods*, 60 F.3d at 1166 (internal quotation marks omitted).

Trial courts are to carefully scrutinize claims of retaliation "[t]o assure that prisoners do not inappropriately insulate themselves . . . by drawing the shield of retaliation around them." *Woods*, 60 F.3d at 1166. "Conclusory allegations of retaliation without a specific factual basis will not suffice." *Graves v. Mbugua*, No. 9:16-CV-170, 2020 WL 6947900, at *5 (E.D. Tex. Aug. 13, 2020), *report and recommendation adopted*, No. 9:16-CV-170, 2020 WL 6940783 (E.D. Tex. Nov. 24, 2020) (citing *Woods*, 60 F.3d at 1166).

Plaintiff alleges that forcing him to participate in MRT program and/or removing him from the program constituted "Retaliation for Free Speech of redress" triggered by his "reporting indiscretions, questioning legality of 'program,'" and complaining that the MRT workbooks were pressuring him "to modify [his] Religious behavior." (Dkt. #13-1 at 2, 3–4.) But even assuming that Plaintiff's objections to the MRT program were in a constitutionally protected form, he fails to establish the other elements of a retaliation claim.

It is clear from the amended complaint that the MRT program was a general requirement that applied to everyone who lived in the veterans' dorm and was not targeted specifically at Plaintiff. Accordingly, the MRT requirement itself could not constitute retaliation against Plaintiff for anything. Further, it is factually and legally absurd to suggest that Plaintiff's removal from the dorm where the MRT program was required—due to his own vigorous objections to the program— was retaliatory. Plaintiff made clear he did not want to participate in the program, and prison officials relocated him to another environment where he would not be required to do so. Plaintiff does not allege that the move entailed any negative consequences for him. Defendants effectively

gave Plaintiff what he wanted, which cannot constitute the injury required to establish a retaliation claim.

To the extent that the amended complaint can be read to allege that the sexual harassment investigation of Plaintiff was in retaliation for his complaints about MRT, he also alleges no constitutional injury from that investigation. The fellow inmate's harassment allegation was found not to be substantiated, and Plaintiff does not allege that he received any punishment because of it. He has no constitutional right not to be investigated for alleged wrongdoing. Moreover, Plaintiff acknowledges in an affidavit that he spoke to the other inmate about sexual acts, and a witness statement attached to his amended complaint confirms that Plaintiff spoke in a sexually explicit manner to the other inmate. (Dkt. #13-2 at 2; Dkt. #13-3 at 3.) On its face, Plaintiff's pleading thus offers a more plausible cause for the investigation than retaliation. And with regard to his own theory—that there was a conspiracy to retaliate against him—he fails to allege the concrete facts required to support such a claim. A plaintiff must plead specific, non-conclusory facts that establish that there was an agreement among the defendants to violate his federal civil rights. *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004); *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987) (plaintiffs asserting conspiracy claims under Section 1983 must plead the operative facts on which their claim is based; bald allegations that a conspiracy existed are insufficient). Plaintiff's own speculation that there was some conspiracy against him does not satisfy that standard. Plaintiff's use of the word "conspiracy" and "retaliation" in the amended complaint are nothing more than conclusory. He fails to state a claim for retaliation for which relief could be granted.

2. Religion

Nor has Plaintiff stated a claim for violation of his right to free exercise of his religion under the First Amendment. First Amendment free exercise protections require the government to refrain from interfering with the religious beliefs and practices of individuals. *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). "The government does not impermissibly regulate religious belief, however, when it promulgates a neutral, generally applicable law or rule that happens to result in an incidental burden on the free exercise of a particular religious practice or belief." *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 135 (5th Cir. 2009) (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993)).

Moreover, a prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Therefore, a government regulation may lawfully interfere with the religious beliefs and practices of a prisoner if it is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). The burden is not on the state to prove the validity of the challenged prison regulation under *Turner* but instead is on the inmate to disprove it. *Overton v. Bazzetta*, 539 U.S. 126 (2003).

In order to balance federal constitutional guarantees with the legitimate concerns of prison administrators, *Turner* requires a court to determine: (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest; (2) whether alternative means of exercising the constitutional right are available; (3) what effect accommodating the exercise of the right would have on the prison system and resources; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights

at low costs to valid penological interests. *Turner*, 482 U.S. at 89–91. No single factor is dispositive, and there is no requirement that all four factors be met. *Scott v. Mississippi Dep't of Corr.,* 961 F.2d 77, 80 (5th Cir. 1992). Where a regulation restricts First Amendment rights in a neutral fashion, it is likely to withstand judicial scrutiny. *McAlister v. Livingston*, 348 F. App'x 923, 932-32 (2009) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989)). Prison officials are afforded great deference in carrying out their complex duties. *O'Lone v. Shabazz*, 482 U.S. 342, 349 (1987); *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002).

According to the amended complaint, the MRT program to which Plaintiff objected is generally applicable to all prisoners who reside in the veterans' dorm. Plaintiff does not provide any details about the program, but the Kentucky Department of Corrections describes it as "an inmate program that has been shown 'to significantly lower recidivism rates in offenders.'" *Brannon v. Williams*, No. 5:20-CV-P59-TBR, 2020 WL 1941286, at *2 (W.D. Ky. Apr. 22, 2020); *see also United States v. Baker*, No. CR 16-53JJM, 2019 WL 7753758, at *5 n.3 (D.R.I. Aug. 6, 2019) ("MRT is moral reconation therapy, a program to change behavior, which would enormously benefit Defendant, if he would attend and engage in it."). The U.S. Department of Justice's National Institute of Corrections reported that MRT was originally developed between 1979 and 1983 and was in use in more than forty states as well as Puerto Rico and Canada by May 2007. *See* Cognitive Behavioral Treatment: A Review and Discussion for Corrections Professionals, at 21–22, available at https://info.nicic.gov/nicrp/system/files/021657.pdf (last visited Aug. 23, 2023). According to information publicly available from the National Institutes of Health's National Center for Biotechnology Information, MRT is "is a cognitive-behavioral intervention aimed at reducing risk for criminal recidivism by restructuring antisocial attitudes and cognitions (i.e., 'criminogenic thinking')." *See* "Study protocol: a hybrid effectiveness-

11

implementation trial of Moral Reconation Therapy in the US Veterans Health Administration," available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5842602/ (last visited Aug. 23, 2023).

Plaintiff finds MRT "unsuitable" and alleges vaguely that it "establish[es] morals from a psychic basis, pressuring to modify Plaintiff's religious behavior." (Dkt. #13-1 at 2.) He alleges, equally vaguely, that one MRT book in particular "caused many confrontations with [his] belief system." (*Id.* at 7.) But Plaintiff fails to allege critical details to support a Free Exercise Claim, including what religion he practices, or specifically how exposure to the MRT program impacted his ability to practice that religion. Mere exposure to secular information in a widely-used program, particularly in connection with the program's legitimate interest in reducing recidivism, does not inherently or impermissibly interfere with an inmate's ability to maintain or exercise his own religious faith. Plaintiff does not allege that his temporary placement in the MRT program prevented him from attending worship services, praying alone according to his beliefs, abiding by any religious dietary restrictions, or performing any other activities that are part of his religion. He fails to state a claim for violation of his religious liberties under the First Amendment.

Plaintiff has not alleged that the MRT program violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc, *et seq.*, but he would fail to state a claim even if he did.

> RLUIPA provides in pertinent part as follows:
>
> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

*See Brown v. Collier*, 929 F.3d 218, 228–29 (5th Cir. 2019); 42 U.S.C. § 2000cc-1(a). Initially, it falls to the plaintiff to demonstrate that the government practice complained of imposes a substantial burden upon the plaintiff's religious exercise. For the reasons explained above, Plaintiff fails to make that showing in this case.

Moreover, RLUIPA does not authorize the recovery of any monetary damages, *see Copeland v. Livingston*, 464 F. App'x 326, 330 (5th Cir. 2012) ("RLUIPA does not create a private right of action against individuals for damages"), and any claim for injunctive relief based on MRT has been mooted by Plaintiff's transfer out of the veterans' dorm where participation in the MRT program is required. *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001). Plaintiff therefore fails to state any viable claim under RLUIPA.

B. Eighth Amendment

The Eighth Amendment to the United States Constitution "'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). To plead a constitutional violation based on the conditions of an inmate's confinement, a plaintiff must allege conditions that objectively "pos[e] a substantial risk of serious harm." *Id.* at 834. He must also allege facts showing that prison officials were subjectively deliberately indifferent to that risk to his health or safety. *Id.*; *see also Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015) (summarizing objective and subjective prongs of an Eighth Amendment violation). The deliberate indifference required to state a constitutional claim "is an extremely high standard to meet," *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), and prison officials act with such indifference only if they know an inmate faces a substantial risk of serious harm and they disregard that risk by failing to take reasonable measures to alleviate it. *See Farmer*, 511 U.S. at 837; *accord Taylor v. Stevens*, 946 F.3d 211, 221 (5th Cir. 2019). Thus,

the prison official "must both be aware of the facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." *Id.*

There is clearly nothing cruel and unusual in a prison setting about being investigated for wrongdoing, being required to participate in a therapeutic program, or being removed from the program due to an unwillingness to participate in it. The only allegation in Plaintiff's complaint that would even arguably implicate the Eighth Amendment is his assertion that a fellow inmate "assaulted" him with hot coffee, which caused his face to sting. But Plaintiff does not allege any facts that would establish that any Defendant was subjectively aware of a substantial risk that such an assault would happen, as required to state a claim for deliberate indifference. Moreover, under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). The temporary sting Plaintiff alleges he experienced after having coffee thrown on him is too de minimis to satisfy that requirement. *See Siglar v. Hightower*, 112 F.3d 191, 193–94 (5th Cir. 1997) (holding that a sore and bruised ear lasting for three days was de minimis and did not meet the physical injury requirement found in the Prison Litigation Reform Act); *Lee v. Wilson*, 237 F. App'x 965, 966 (5th Cir. 2007) (unpublished) (finding prisoner's split lip to be a de minimis injury).

Plaintiff also seems dissatisfied that the alleged assault was not officially reported or investigated. But citizens have no constitutional right to have anyone else investigated or disciplined. *See Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990) ("Contrary to Oliver's contention, he does not have a constitutional right to have someone criminally prosecuted."); *Van Meter v. Warder*, No. 3-06-CV-0431-L, 2006 WL 8436927, at *2 (N.D. Tex. June 22, 2006),

14

*report and recommendation adopted*, No. 3:06-CV-0431-L, 2006 WL 8436928 (N.D. Tex. July 19, 2006) ("[T]he court sua sponte notes that a private citizen has no right to have someone criminally prosecuted or investigated."). Plaintiff's Eighth Amendment claim is frivolous.

    C. Fourteenth Amendment

Finally, Plaintiff does not allege any facts that would establish a violation of his rights to under the Fourteenth Amendment. Prisoners only have a Fourteenth Amendment right to procedural due process before the imposition of restrictions that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Plaintiff complains about the process used in his sexual harassment investigation, but that investigation led to a finding that the charge was not substantiated, and Plaintiff faced no punishment for it whatsoever. Accordingly, he cannot establish any due process violation.

Plaintiff vaguely alleges that the sexual harassment investigation also violated his right to equal protection, "[v]iolating Plaintiff's right to be free from sexual discrimination where placing Bi-sexual connotation upon Plaintiff." (Dkt. #13-1 at 4.) It appears that Plaintiff believes that being questioned about his sexual preference during the investigation and told that a refusal to answer would result in a presumption that he was bisexual somehow constituted discrimination. But to state an equal protection claim, a plaintiff must typically allege that a government actor "intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). Alternatively, a plaintiff may state a "class of one" equal-protection claim by alleging that he personally "has been irrationally singled out" for unfavorable treatment. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (citing *Vill.*

*of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Plaintiff does not state a claim under either theory.

Plaintiff does not allege that he is actually a member of any protected class or that he was treated differently than anyone else because of such membership. He suggests that he was singled out for unfavorable treatment, but he does not allege any negative consequences resulted from the investigators' questions about his sexuality. To the contrary, they ultimately found the allegations against him not to be substantiated. Moreover, as discussed above, Plaintiff and his witness have affirmatively established that he spoke to another inmate in a sexually explicit manner. These facts do not support any type of equal protection claim.

## IV. Conclusion

For the reasons set forth above, Plaintiff's amended complaint is frivolous and fails to state a claim for which relief can be granted. Because his allegations, if true, lack any merit for the reasons already explained, it is unnecessary for the Court to address whether he also fails to allege the personal involvement of supervisors named as Defendants or to establish that the private citizens named as Defendants acted in a capacity that would make them subject to liability under Section 1983.

Dismissal is appropriate where Plaintiff has already been given a chance to cure his deficiencies but still fails to state a viable claim. *See Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) (holding that "once given adequate opportunity, even a *pro se* complaint must contain specific facts supporting its conclusions"); *Garcia v. City of Lubbock, Texas*, 487 F. Supp. 3d 555, 566 (N.D. Tex. 2020) (dismissing where inmate had "already amended his complaint once" and been afforded "an opportunity to further flesh out his claims").

RECOMMENDATION

Accordingly, the undersigned recommends that Plaintiff's lawsuit be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B).

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 24th day of August, 2023.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE